IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-00851-REB-MEH

15TH AND SPRUCE BUILDING LLC,

 Plaintiff,

v.

COLORADO CAPITAL BANK, Castle Rock, CO, receiver Federal Deposit Insurance Corporation,

 Defendant.

---

# RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge.**

Pending before the Court is Defendant FDIC's Motion to Dismiss First Amended Complaint [filed July 3, 2012; docket #29]. Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1C, the motion has been referred to this Court for recommendation. (Docket #30.) The matter is fully briefed, including a sur-reply. In addition to the briefs, the Court heard oral argument on November 8, 2012. Upon consideration of the entire record and the law, the Court believes that Plaintiff's Amended Complaint exceeds the scope of its Proof of Claim and should, therefore, be dismissed pursuant to Rule 12(b)(1). Accordingly, the Court respectfully recommends that the Defendant's Motion be **GRANTED**.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the

## BACKGROUND

In adjudicating the pending motion, the Court refers to the First Amended Complaint (hereinafter "Amended Complaint") as the operative pleading. (Docket #24.)

**I.   Facts**

Plaintiff's claims arise from a leasing relationship between Plaintiff and Defendant Colorado Capital Bank. (Docket #24 at ¶ 6.) The parties entered into a lease agreement on December 28, 2010, under which Plaintiff (the landlord) agreed to rent commercial space at 1434 Spruce Street, #210, Boulder, Colorado, ("the Premises") to Defendant (the tenant). (*Id.*) In early 2011, Defendant expressed an interest in making substantial improvements to the Premises. (*Id.* at ¶ 7.) Defendant initiated this process by having its architect draft plans for the renovation. (*Id.* at ¶ 8.) The plans called for significant alternations to the Premises, including demolition and gutting. (*Id.* at ¶ 9.) Plaintiff approved the plans, and Defendant submitted them for bids. (*Id.* at ¶ 8.) The bids estimated the construction would cost $155,729.00. (*Id.* at ¶ 10.) Despite drafting the plans and collecting bids, Defendant asked Plaintiff to contract and pay for the necessary construction. (*Id.* at ¶ 11.) Defendant agreed to pay Plaintiff "all costs of construction as construction proceeded." (*Id.* at ¶ 12.) In light of this arrangement, Plaintiff retained Pearl Street Mall Properties ("PSMP") to perform the construction. (*Id.* at ¶ 13.) The first phase of construction required demolition and gutting of the Premises. PSMP completed this work, and Plaintiff paid them accordingly. (*Id.* at ¶ 14-15.)

On or around July 8, 2011, after construction was underway, Defendant closed and the FDIC was appointed as receiver. (Docket #24 at ¶ 16.) Acting in this capacity, the FDIC ordered all construction work at the Premises to cease immediately. (*Id.* at ¶ 17.) At this time, the Premises

---

Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

have not yet been restored to a usable condition. (*Id.*) On October 24, 2011, the FDIC notified Plaintiff that it was repudiating the lease agreement between Plaintiff and Defendant. (*Id.* at ¶ 18.) Plaintiff sought to recover the cost of construction, including the demolition and restoration expenses, by filing a Proof of Claim with the FDIC on January 20, 2012, for $155,729.00. In its description of the claim, Plaintiff asserts that Defendant "was obligated to finish the leased space per their lease []. The construction was never completed, leaving the space in it's (sic) current, un-leasable state. We ask that the agreed to funds be provided to complete the work." (Docket #1 at 32.) On February 3, 2012, the FDIC disallowed the claim. (Docket #24 at ¶ 20.)

## II.     Procedural History

Plaintiff initiated this action on April 3, 2012, pursuant to 12 U.S.C. § 1821(d)(6)(A)[2], within 60 days of the FDIC disallowing its claim. (Dockets ##1 at 2, 24 at 2.) On June 26, 2012, Plaintiff filed an Amended Complaint in accordance with Fed. R. Civ. P. 15(a)(1)(B). (Docket #24.) Plaintiff's Amended Complaint asserts a single cause of action for breach of contract. (*Id.* at 4-5.) Though the Amended Complaint does not specify a particular contract, it does assert the following contractual elements: Defendant agreed to pay Plaintiff for the cost of construction resulting from Defendant's desired improvements, Defendant failed to pay Plaintiff the amount owed, Plaintiff performed its obligations under the agreement, and Plaintiff has been damaged by Defendant's failure to do the same. (*Id.* at 4.) Defendant responded by filing the pending motion to dismiss on July 3, 2012. (Docket #29.)

Because Defendant's arguments for dismissal have evolved over the course of the briefing, a summary of each party's positions may be useful. In its motion to dismiss, Defendant argues that

---

[2]Though Plaintiff's initial complaint cites 12 U.S.C. § 1821(d)(6)(B) as the jurisdictional basis for the claim, the Amended Complaint correctly relies on 12 U.S.C. § 1821(d)(6)(A). (*See* docket #1 at 2.)

Plaintiff's claims should be dismissed because Plaintiff was not entitled to any damages, and thus, failed to state a claim upon which relief could be granted. In support of this position, Defendant notes that Congress has prohibited recovery of most categories of damages against FDIC. Defendant argues that the remaining exemptions for "contractual rent" or "unpaid rent" do not apply to the past or future construction costs incurred by Plaintiff as a result of the demolition or restoration of the Premises. In anticipation of Plaintiff's contention that the construction agreement was not part of the lease, Defendant points to Plaintiff's Proof of Claim, which refers only to the lease, and notes that the construction agreement modified the lease insofar as it required Plaintiff, not Defendant, to both contract and pay for improvements to the Premises. Even if the construction agreement was distinct from the lease, Defendant argues that the FDIC's repudiation of the lease also terminated the construction agreement because they pertain to the same transaction.

As anticipated by Defendant, Plaintiff's response characterizes the construction agreement as separate and distinct from the lease agreement. However, Plaintiff argues that the construction costs constitute direct compensatory damages for which the FDIC remains liable pursuant to the general provisions of 12 U.S.C. § 1821(e)(3)(A). At a minimum, Plaintiff contends that whether the construction agreement modifies the lease is a question of fact that is not appropriately resolved on a motion to dismiss. Finally, Plaintiff asserts that even if the construction agreement modifies the lease, the construction expenses constitute rehabilitation or repair costs and, thus, may be included in compensable unpaid or contractual rent. Any other interpretation, says Plaintiff, undermines Congress' intent.

In light of Plaintiff's argument regarding the separate and distinct nature of the construction agreement, Defendant's reply attacks the sufficiency of Plaintiff's Proof of Claim and, thus, the jurisdictional basis for Plaintiff's Amended Complaint. Specifically, Defendant argues that

4

Plaintiff's Proof of Claim, which cites the lease agreement, did not provide the FDIC with sufficient notice of a separate construction agreement to satisfy the presentation requirements of 12 U.S.C. § 1821(d)(3)(B)(i). The Court ordered Plaintiff to submit a sur-reply regarding the jurisdictional question on or before October 11, 2012. Plaintiff's sur-reply maintains that the Proof of Claim provides an adequate basis for jurisdiction for claims arising from a separate construction agreement. However, Plaintiff also appears open to an alternative characterization of the construction agreement insofar as Plaintiff asserts that reimbursement for the construction costs is recoverable under the law as a form of rent.

## STANDARD OF REVIEW

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause *at any stage* of the proceeding in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (emphasis in original). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso*, 495 F.2d at 909. Accordingly, Plaintiff in this case bears the burden of establishing that this Court has jurisdiction to hear his claims. Further, under a 12(b)(1) motion, "a court has 'wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional

facts.'" *Stuart v. Colorado Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001) (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)). In such an instance, "a court's reference to evidence outside the pleadings does not convert the motion into a Rule 56 motion." *Id.*

## DISCUSSION

In the Court's view, the briefing and argument on Defendant's pending motion raise considerable questions regarding the Court's jurisdiction to adjudicate Plaintiff's Amended Complaint. Given the relative complexity of the issue, the Court finds that a brief description of the history and purpose of the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), 12 U.S.C. § 1981, provides important context for the forthcoming recommendation.

Congress enacted FIRREA in 1989 "in response to the precarious financial condition of the nation's banks and savings and loan institutions." *UMLIC-Nine Corp. v. Lipan Springs Dev. Corp.*, 168 F.3d 1173, 1178 (10th Cir. 1999) (quoting *RTC v. Love*, 36 F.3d 972, 975 (10th Cir. 1994)). FIRREA grants broad powers to both the Resolution Trust Corporation ("RTC") and the FDIC[3] to "deal expeditiously with failed financial institutions." *Love,* 36 F.3d at 975. These powers include the "historic right," upon appointment as receiver, to repudiate a contract or lease in a timely manner. *Pioneer Bank and Trust Co. v. RTC*, 729 F. Supp. 828, 831 (N.D. Ill. 1992). However, FIRREA does not shield the receiver from damages for existing obligations. *Id.*

Upon appointment of receivership, FIRREA requires the FDIC to promptly publish a notice to creditors of the financial institution. *Love*, 36 F.3d at 975 (citing 12 U.S.C. § 1821(d)(3)(B)). Following publication, creditors have a limited amount of time within which to present their claims, "with proof," to the receiver. *Id.* Once a claim has been presented, the FDIC has 180 days to issue

---

[3]The FDIC and RTC share identical powers. *See UMIC-Nine-Corp.*, 168 F.3d at 1117. Since the case law does not recognize a distinction between the two, neither will this Court. *See Mile High Banks v. FDIC*, No. 11-cv-014167-WJM-MJM, 2011 WL 2174004, at *1 (D. Colo. June 2, 2011).

a ruling. *Id.* (citing 12 U.S.C. § 1821(d)(5)(A)(i)). If the claim is disallowed, the claimant may seek judicial review. *Id.* (citing 12 U.S.C. § 1821(d)(6)(A)).

Under FIRREA, "a court does not have jurisdiction over a claim unless it has first been presented to the [FDIC]." *Id.* at 976. The Tenth Circuit has interpreted the term "claim" to mean a cause of action. *Id.* Affirmative defenses are excluded from this definition because they do not constitute "action[s] seeking a determination of rights." *Id.* Aside from this distinction, the Tenth Circuit has not, based on the Court's research, articulated a test for determining the specificity with which a cause of action must be presented.

Recent statements from other circuits provide some clarity regarding Congress' intent with respect to the administrative exhaustion requirements. *See Campbell v. FDIC*, 676 F.3d 615, 619 (7th Cir. 2012). In *Campbell*, the Seventh Circuit observed that the purpose of the exhaustion requirement is two-fold: "(1) to minimize costs to the receivership estate and to the legitimate claimants who share in the distributions from the estate, and (2) to minimize the burden on federal courts by avoiding needless litigation." *Id.*

In consideration of these purposes, a published decision from the District of Massachusetts sets forth a standard for the determining the sufficiency of a Notice of Claim. *See Branch v. FDIC*, 833 F. Supp. 56, 60 (D. Mass. 1993). In *Branch*, the court found that the appropriate question for determining whether a plaintiff adequately presented to the FDIC the challenged claims is "whether [the plaintiff's] administrative claims provided the particular FDIC receiverships with adequate notice of the challenged claims and with sufficient information and detail about the claims to enable the FDIC expeditiously and fairly to allow or disallow the claims." *Id.* Because the *Branch* plaintiff's claims were "based upon the same general set of facts as were his administrative claims and [he] [sought] recovery under precisely the same legal causes of action," the court concluded that

he had adequately exhausted his administrative remedies. *Id*. at 61.

Other district courts have emphasized the importance of specificity in presenting a theory of recovery to the FDIC in a Proof of Claim. *See Ravenswood, LLC v. FDIC*, 10-cv-1064, 2011 WL 1079495 (N.D. Ill. March 21, 2011). In *Ravenswood*, the plaintiff entered into a loan agreement with a bank under which the bank would pay the plaintiff for the renovation of an industrial loft. *Id*. at * 1. Upon the FDIC's appointment as receiver, the *Ravenswood* plaintiff presented a claim for "REPUDIATION OF CONSTRUCTION CONTRACT BY LENDER AND FDIC AS RECEIVER FOR. . .FAILED INSTITUTION." *Id*. at *5. In upholding the FDIC's denial of the claim, the *Ravenswood* court rejected the plaintiff's attempt to proceed under a diminution in value theory first articulated in an amended complaint. *Id*. at *1, *5. The court found that the FDIC's disallowance on the basis of repudiation was adequate and that the FDIC was under no further obligation to investigate the basis for the plaintiff's claim or explain its denial under other possible theories of recovery. *Id*. at *6. After all, the court noted, "how was the FDIC[] supposed to respond to a theory it did not know [the plaintiff] was presenting?" *Id*. at *5.

The facts of this case are similar to those at issue in *Ravenswood* in that the Plaintiff' theory of recovery has evolved over time. Initially, Plaintiff's Proof of Claim sought recovery of its construction costs "per their lease." (Docket #1 at 32.) In addition to this description, Plaintiff submitted a copy of the lease agreement and construction proposal with its Proof of Claim. (*See id*. at 6-28.) Upon review of the materials, the FDIC noted that the documents Plaintiff provided were from a third party vendor, and thus, were insufficient to support Plaintiff's stated claim. (*Id*. at 33.)

After the FDIC's disallowance, Plaintiff brought this action in federal court. (Docket #1.) Plaintiff's original and amended complaints assert a single cause of action for breach of contract. (Dockets ##1 at 4, 24 at ¶¶ 21-25.) Because the Amended Complaint does not specify exactly which

8

contract Defendant allegedly breached, the Court questioned Plaintiff's counsel specifically on this point at the November 8, 2012 hearing. Plaintiff's counsel asserted, unwaveringly, that Plaintiff's breach of contract claim concerns a separate and distinct oral agreement between the parties rather than the lease. However, Plaintiff argues that its Proof of Claim was nevertheless sufficient to put Defendant on notice of the nature of its claim. The Court disagrees.

Though the Court acknowledges that Plaintiff's Proof of Claim and subsequent pleadings assert a single general cause of action for breach of contract, FIRREA distinguishes claims under a lease from claims under other contracts for purposes of recovery. In particular, 12 U.S.C. § 1821(e)(4) limits recovery for claims arising from "[l]eases under which the institution is the lessee" while subsection (e)(3) governs damages for repudiation of any contract *except* for those governed by subsection (e)(4), among others. Because of this distinction, Plaintiff's assertion that the agreement arose "per their lease" carried legal significance insofar as it directed the FDIC to analyze the validity of Plaintiff's Proof of Claim under the provisions of subsection e(4) rather than e(3). To echo the rhetoric of *Ravenswood*, how was the FDIC to know that Plaintiff, who asserted its claim "per their lease," was not actually seeking relief under the lease, but instead pursuant to a separate oral construction agreement of which Plaintiff provided no evidence? *See Ravenswood LLC*, 2011 WL 1079495, at *5. Though the FDIC could have theoretically conducted further investigation, the Court finds that requiring the FDIC to ensure that the asserted Proof of Claim presents the appropriate theory of recovery conflicts with FIRREA's intent to enable receivers to "deal expeditiously with failed financial institutions" and is otherwise unreasonable. *See Love,* 36 F.3d at 975; *see also Ravenswood, LLC*, 2011 WL 1079495, at *6 (quoting *McCaron v. FDIC*, 111 F.3d 1089, 1094 (3d Cir. 1997) ("Once the receiver makes a finding that a contract is burdensome, it does not have to give reasons for its decision.").

In consideration of FIRREA's purposes and relevant case law governing its exhaustion requirements, the Court finds that Plaintiff's Proof of Claim limits Plaintiff's claims to those arising from the lease. Plaintiff adamantly asserts that its breach of contract claim does not pertain to the lease, but instead arises from a separate oral agreement concerning the construction.[4] Thus, the Court finds that the breach of contract claim set forth in Plaintiff's Amended Complaint has not been properly exhausted and should be dismissed pursuant to Rule 12(b)(1), accordingly.

## CONCLUSION

For the reasons described above and based on the entire record herein, the Court respectfully recommends that Defendant FDIC's Motion to Dismiss First Amended Complaint [filed July 3, 2012; docket #29] be **GRANTED** and that Plaintiff's Amended Complaint be dismissed pursuant to Rule 12(b)(1).

Dated at Denver, Colorado, this 30th day of November, 2012.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

---

[4] Though the Court finds Plaintiff's Amended Complaint somewhat vague, the Court will not permit Plaintiff to benefit from its imprecision by adopting a more liberal construction of the pleadings than the one advanced by Plaintiff's counsel.